**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DIKA-HOMEWOOD, L.L.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21 C 786** |
| | ) | |
| **OFFICEMAX, INC. n/k/a** | ) | |
| **OfficeMax North America, Inc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge.

Dika-Homewood, LLC sued OfficeMax, Inc. for breach of contract arising from a lease agreement. OfficeMax counterclaimed, alleging breach of contract, promissory estoppel, and unjust enrichment. Dika has moved to dismiss OfficeMax's counterclaim for failure to state a claim and to strike its affirmative defenses. For the reasons stated below, the Court grants Dika's motion to dismiss counts 1 and 3 of the counterclaim but declines to dismiss counts 2 and 4. The Court also strikes some, but not all, of OfficeMax's affirmative defenses.

### Background

On December 20, 1999, Dika and OfficeMax entered into a written lease agreement under which OfficeMax leased a shopping center space owned by Dika in Homewood, Illinois, for a term of fifteen years. The lease was set to expire on January 31, 2016. On March 23, 2015, the parties executed a second amendment under which the lease term was extended to January 31, 2021. The lease required OfficeMax to pay

rent, a pro-rata share of common area maintenance expenses each month, the balance of its actual proportionate share of the common area expenses at the end of each calendar year, and annual real estate taxes.

Earlier this year, Dika filed suit against OfficeMax for breach of contract, alleging it failed to pay rent from October 1, 2020 through December 2, 2020, its share of the common area expenses, and the real estate taxes for 2020 and January 2021. In answering Dika's breach of contract claim, OfficeMax contends that it acted within its right to withhold rent payments due to Dika's failure to reimburse it for the cost of replacing the property's HVAC system and installing LED lighting. OfficeMax further contends that it fully paid its portion of real estate taxes that were actually due.

OfficeMax asserts eight affirmative defenses to Dika's claim. The Court will discuss these as necessary later in this decision.

OfficeMax's counterclaim tracks certain contentions in its answer and affirmative defenses. It alleges that it "was required to replace the HVAC system" in October 2016 for a little under $97,000, Countercl. ¶ 11, and that in 2019, it "renovated, redecorated, and/or remodeled" the property by installing LED lighting at a cost of a little over $14,000. *Id.* ¶ 12. OfficeMax alleges that it requested repayment from Dika for these expenditures pursuant to certain terms in the lease and that Dika "approved that request in writing and said that payment was forthcoming." *Id.* ¶ 6. At some later point, however, Dika "made an about-face and refused to reimburse OfficeMax for any amount." *Id.*

OfficeMax has asserted a four-count counterclaim. In count 1, OfficeMax alleges that Dika is in breach of section 14 of the lease due to its failure to reimburse OfficeMax

2

for replacement of the HVAC system.  In count 2, OfficeMax alleges that Dika breached section 5 of the second amendment to the lease by failing to reimburse OfficeMax for the LED lighting expense.   In counts 3 and 4, OfficeMax seeks to recover for these same expenses under the doctrines of promissory estoppel and unjust enrichment.

**Discussion**

**1.     Motion to dismiss counterclaim**

Dika has moved to dismiss all four counts of OfficeMax's counterclaim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 677-78 (2009).  When ruling on a Rule 12(b)(6) motion to dismiss, the court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).  Legal conclusions, however, are "insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012).

**a.     Count 1 - breach of contract claim**

In count 1, OfficeMax alleges that Dika breached section 14 of the lease by failing to reimburse it for the expense it incurred to replace the HVAC system.  The parties do not dispute that Illinois law governs the lease and its amendments.  To prevail on a breach of contract claim under Illinois law, a party must prove that a

3

contract existed, it performed all conditions required under the contract, the other party breached the contract, and the party asserting the claim suffered damages as a result of the breach. *Shubert v. Fed. Express Corp.*, 306 Ill. App. 3d 1056, 1059, 715 N.E.2d 659, 661 (1999).

Dika does not dispute that a contract existed between the parties. Dika argues, however, that OfficeMax failed to satisfy the condition in the lease that would have entitled it to reimbursement for its replacement of the HVAC system. Specifically, Dika points out that OfficeMax did not replace the HVAC system during the last three years of the lease's extended term, which Dika contends is required under the lease as a condition of reimbursement. OfficeMax did not address this point in either its counterclaim or its response to the motion to dismiss.

Illinois law defines a condition precedent as a condition "which must be performed either before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform." *MXL Indus., Inc. v. Mudler*, 252 Ill. App. 3d 18, 25, 623 N.E.2d 369, 374 (1993). A condition precedent is "generally subject to the rule of strict compliance." *Id.*

The contractual condition in question meets this requirement. Section 14 of the lease states, in relevant part, as follows:

> Landlord represents and warrants that all utility, mechanical, plumbing, and other systems serving the Demised Premises shall be in good operating condition and repair as of the date of occupancy by Tenant, and all HVAC systems shall be new, and Landlord shall pay for any replacements required for such systems prior to the expiration of the first full calendar year after the Date of Occupancy. If Tenant is required to replace any such systems during the last three (3) years of the term (or extended term, as the case may be) of this lease, Landlord, within the latter of fifteen (15) days after receiving copies of paid bills therefor or ninety (90) days prior to the expiration of the term of the lease, shall

4

> reimburse Tenant for an amount equal to the product obtained my
> multiplying the cost thereof by a faction equal to (a) one (1) minus (b) a
> fraction, the numerator of which small be the number of days subsequent
> to the date Tenant paid such bills to and including the last day of the term
> (or extended term, as the case may be) of this lease, and the denominator
> of which shall be the number of days in the entire "useful life" of such
> systems.

Am. Compl., Ex. A § 14.

OfficeMax alleges that it replaced the HVAC system in October 2016. By then, the parties had entered into the second amendment to the lease, which extended the term of the lease—previously set to expire in January 2016—to January 2021. Thus when OfficeMax replaced the HVAC systems, the extended end date of the lease was a little over four years away. Because section 14 expressly provided that OfficeMax had to replace the HVAC system within the last three years of the extended term to be entitled to reimbursement, its replacement of the system fell outside the contractual reimbursement period. It follows that Dika did not breach the lease by refusing to reimburse OfficeMax. *See Godare v. Sterling Steel Casting Co.*, 103 Ill. App. 3d 46, 52, 430 N.E.2d 620, 624 (1981) (defendant's duty to pay disability benefits was conditional on the plaintiff complying with the dispute resolution process); *see also Albrecht v. N. Am. Life Assur. Co.*, 27 Ill. App. 3d 839, 843, 327 N.E.2d 317, 320 (1975) (decedent was required to submit an application for life insurance before his death in order for the insurance company to be bound by its obligation to pay on the life insurance claim). The Court therefore dismisses count 1 of the counterclaim.

**B.    Count 2 - breach of contract claim**

In count 2 of its counterclaim, OfficeMax alleges that Dika breached section 5 of the second amendment to the lease by failing to pay OfficeMax the tenant allowance to

5

reimburse it for installing LED lighting.  This term of the second amendment states:

> **Tenant Allowance.**  Landlord agrees to pay to Tenant $75,000.00 (**the "Tenant Allowance"**).  The Tenant Allowance shall be due and payable on the date that is thirty (30) days following the date that Tenant provides reasonable evidence to Landlord that Tenant incurred expenses remodeling, redecorating and/or renovating the Premises, the cost of which is equal to or in excess of $75,000.00 (if Tenant spends less than $75,000.00, then the Tenant Allowance shall be reduced to be equal to such smaller figure).  The Tenant Allowance may be used for any expenses incurred by Tenant in conjunction with Tenant's remodel, redecoration and/or renovation of the Premises, as well as for any furnishings, fixtures and equipment related thereto.

Am. Compl., Ex. B § 5.

Dika argues that this provision does not apply to OfficeMax's installation of LED lighting because the lighting was not installed for "remodeling, redecorating and/or renovating the premises," as required by section 5.  The lease, including the second amendment, does not provide a definition for the terms remodeling, redecorating, or renovating.  OfficeMax expressly alleges, however, that it installed the lighting for these purposes, and without a more developed factual record the Court cannot say, as a matter of law, that these expenditures fall outside the terms of section 5.  Accordingly, the Court declines to dismiss count 2.

## C.    Count 3 - promissory estoppel

In count 3, OfficeMax alleges, in the alternative to its breach of contract claims, that if Dika did not breach the lease, OfficeMax should be able to recover its expenditures for the HVAC system and LED lighting under the doctrine of promissory estoppel.  To sustain a claim for promissory estoppel under Illinois law, a "plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiffs' reliance was expected and foreseeable by defendants, and

6

(4) plaintiff relied on the promise to its detriment." *Janda v. U.S. Cellular Corp.*, 2011 IL App (1st) 103552, ¶86, 961 N.E.2d 425, 443 (2011) (internal quotation marks and citations omitted).

OfficeMax alleges that Dika promised to reimburse its expenditures, but it says this came *after* it had completed the work in question. For that reason, OfficeMax cannot possibly have relied on Dika's promise to its detriment in spending the money needed to conduct the work. OfficeMax does not identify any other sort of reliance on Dika's claimed after-the-fact promise, nor can the Court imagine any. For this reason, OfficeMax's claim of promissory estoppel fails to state a claim. The Court therefore dismisses count 3.

**D.     Count 4 – unjust enrichment**

In count 4, OfficeMax alleges that if it cannot sustain a breach of contract claim for one or both of the expenditures, it should be able to recover under the doctrine of unjust enrichment. To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989)). OfficeMax alleges that because the lease has ended and it has vacated the property, Dika is unjustly retaining the benefit of both the HVAC system and the LED lighting that OfficeMax paid to install.

Because unjust enrichment "is an equitable remedy based on a contract implied in law," it is available only "when there is no adequate remedy at law." *Gociman v.*

*Loyola Univ. of Chicago*, No. 20 C 3116, 2021 WL 243573, at *1, *5 (N.D. Ill. Jan 25, 2021) (citing *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 836 N.E.2d 681 (2005)). Thus "[w]here a contract governs the parties' relationship, the doctrine of unjust enrichment has no application." *Id.* A party may, however, plead unjust enrichment in the alternative to a claim for breach of contract. *Id.* Though a party may not, consistent with this rule, "include allegations of an express contract" in its unjust enrichment claim, *Guinn*, 361 Ill. App. 3d at 604, 836 N.E.2d at 705, OfficeMax has not done so. Rather, it has alleged unjust enrichment as an alternative claim only.

Dika argues that under Illinois law, "a claim for unjust enrichment cannot stand apart from an underlying claim and is not a separate cause of action" and that because OfficeMax's claim for unjust enrichment will likely rely on the alleged breach of contract by Dika, if the breach of contract claims fail, then the unjust enrichment claim fails too. In *Cleary*, however, the Seventh Circuit concluded that "the Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action." *Cleary*, 656 F.3d at 516. The Court therefore declines to dismiss count 4 of the counterclaim.

## 2. Motion to strike affirmative defenses

Dika has also moved to strike OfficeMax's affirmative defenses. Under Fed. R. Civ. P. 12(f), a court may "strike any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." *Carpenter v. Ford Motor Co.*, 761 F. Supp. 62, 64-65 (N.D. Ill. Feb. 25, 1991). Defenses generally will not be stricken "if they are sufficient as a matter of law or if they present questions of law or fact" but rather "will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

Affirmative defenses "are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Id.* at 1294. Thus a defendant must provide "a short and plain statement" of its affirmative defenses as required by Rule 8(b), and the allegations in the defense "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

      **a.**     **Affirmative defenses 1 and 2**

In affirmative defense 1, OfficeMax alleges that Dika failed to perform its obligations under the parties' contract by failing to reimburse OfficeMax for the replacement of the HVAC system, failing to provide the tenant allowance for the LED lighting, and failing to provide notice of default and opportunity to cure under section 23 of the lease. Affirmative defense 2 repeats the last of these points.

The Court strikes defense 1 in part, with respect to the HVAC replacement cost, for the reasons described earlier in this decision. The Court otherwise denies Dika's motion to strike. On the question of notice and opportunity to cure, Dika has submitted evidence suggesting it satisfied this requirement, but Court is required to take OfficeMax's contrary allegation as true for purposes of the motion to strike.

      **b.**     **Affirmative defenses 3 and 4**

In affirmative defense 3, OfficeMax alleges that if "the Court finds that OfficeMax is not entitled to the Tenant Allowance," then Dika "should be equitably estopped from denying [the] Tenant Allowance to OfficeMax." *See* Answer at 7. OfficeMax further alleges that Dika "knowingly represented that it had approved the request" and that "OfficeMax reasonably relied on this representation." *Id.* OfficeMax makes similar allegations affirmative defense 4, asserting promissory estoppel.

Equitable estoppel requires the proponent to show there was "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel."  *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992).  Similarly, promissory estoppel requires the proponent to show that the opposing party "(1) . . . made an unambiguous promise to [the promise], (2) [the promise] relied on such promise, (3) [this] reliance was expected and foreseeable by [the promisor], and (4) [the promise] relied on the promise to its detriment."  *Janda*, 2011 IL App (1st) 103552, ¶ 86, 961 N.E.2d at 443.

As discussed earlier, OfficeMax's allegations reflect that Dika's alleged promises regarding reimbursement came *after* OfficeMax had already completed the work in question.  Thus, OfficeMax could not have relied on Dika's alleged representation or promise in performing the work.  OfficeMax does not allege any other form of detrimental reliance.  The Court therefore strikes defenses 3 and 4 due to the absence of an essential element of each.

### c.    Affirmative defense 5

In affirmative defense 5, OfficeMax alleges that Dika "intentionally relinquished its right to payment [of rent] through its overt actions, statements, and agreements." Answer at 7.  Under Illinois law, waiver consists of the "voluntary and intentional relinquishment of a known right."  *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009).  A waiver may be "by an express agreement" or "implied from the conduct, acts or words of the party who is alleged to have waived a right."  *Id*.  If waiver is implied, "the act relied on to constitute the waiver must be clear,

unequivocal, and decisive." *Id.* Finally, "if the facts necessary to constitute waiver are in dispute" or if different inferences may be drawn from the evidence, then the issue of waiver is a question of fact. *Id.*

The Court cannot, at this juncture, conclude that the waiver defense is unavailable as a matter of law, but OfficeMax has not identified any of the "overt actions, statements, and agreements" upon which it relies. The Court concludes that the defense is insufficiently pleaded for this reason and strikes it, with leave to amend within fourteen days.

### d.     Affirmative defense 6

In affirmative defense 6, OfficeMax alleges that Dika "consented to OfficeMax's replacement of the HVAC system and implementation of LED lighting in exchange for rent withholding to cover some of OfficeMax's expenses." Answer at 8. This defense is sufficiently pleaded. The Court declines to strike it.

### e.     Affirmative defense 7

In affirmative defense 7, OfficeMax argues that Dika's damages, if any, are due to its own failure to mitigate and "should be denied in whole or in part due to such failure." *See* Answer at 8. The problem with the defense is that OfficeMax offers no factual allegations regarding what it contends constituted failure to mitigate. The defense is insufficiently pleaded, and the Court therefore strikes it, with leave to amend within fourteen days.

### f.     Affirmative defense 8

In affirmative defense 8, OfficeMax argues that any damage award to Dika "should be offset" by the amount of damages Dika has caused OfficeMax. *See* Answer

at 8.  The Court has allowed certain of OfficeMax's claims to proceed, and if it prevails on those it may recover damages that can be used to offset any recovery ordered for Dika.  The Court declines to strike this defense.

**Conclusion**

For the foregoing reasons, the Court dismisses counts 1 and 3 of defendant's counterclaim but otherwise denies plaintiff's motion to dismiss the counterclaim [dkt. no. 18].  In addition, the Court strikes defendant's affirmative defense 1 in part and defenses 3 and 4 in their entirety; strikes defenses 5 and 7 with leave to amend in fourteen days; and otherwise denies plaintiff's motion to strike.

Date:  August 17, 2021

_____
MATTHEW F. KENNELLY
United States District Judge